1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RITA MAHONEY, *et al.*, | Case No. 13-cv-2530-W (JMA) |
| Plaintiffs, | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS [DOC. 4]** |
| v. | |
| BANK OF AMERICA, NATIONAL ASSOCIATION, *et al.*, | |
| Defendants. | |

On September 12, 2013, Plaintiffs Rita Mahoney and Eric Johnston commenced this action against Defendants Bank of America, National Association ("BANA") and Nationstar Mortgage LLC ("Nationstar") in the San Diego Superior Court. On October 21, 2013, Defendants removed the action to this Court. Defendants now move to dismiss Plaintiffs' complaint in its entirety. Plaintiffs oppose.

The Court decides the matter on the papers submitted and without oral argument. See Civ. L.R. 7.1(d.1). For the following reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion to dismiss.

//

# I.     BACKGROUND[1]

On or about April 2, 2004, Plaintiffs purchased real property ("subject property") located in San Diego, California.  (Compl. ¶ 7.)  To fund their purchase, Plaintiffs obtained a purchase-money-mortgage loan in the amount of $960,000 from McMillin Real Estate and Mortgage Company, Inc.  (Id. Ex. B; see also Defs.' RJN Ex. A.)  The loan repayment obligations were secured by a deed of trust encumbering the subject property.  (Compl. Ex. B.)  The deed of trust named MERS as beneficiary and Chicago Title Company as trustee.  (Id.)  MERS subsequently assigned the beneficial interest in the loan to Bank of America, N.A., successor by merger to BAC Home Loans Servicing, L.P. f/k/a Countrywide Home Loans Servicing, L.P.  (Defs.' RJN Ex. B.)  BANA then assigned the beneficial interest in the loan to Deutche Bank National Trust Company, as Trustee for the Holders of the GSR Mortgage Loan Trust 2004-7.  (Id. Ex. C.)  BANA serviced the loan until July 1, 2013, when serving was transferred to Nationstar.  (Compl. ¶ 24.)

After purchasing the subject property, Plaintiffs timely paid their monthly mortgage payments.  (Compl. ¶ 9.)  Despite a "dramatic decrease in their income," Plaintiffs continued to timely pay their monthly mortgage into 2011, when their monthly payments increased from $3,800 to $5,900 per month.  (Id. ¶ 10.)  The increase occurred because their loan changed from a fixed-interest rate into an adjustable-rate mortgage in 2011.  (Id.)  Plaintiffs struggled to make these increased payments.  (Id.)  So in June 2011, Plaintiffs "met with [BANA] loan representatives at a mortgage modification workshop . . . to request that the Loan be restructured, and were told that they were excellent candidates for a loan modification."  (Id.)  But Plaintiffs were subsequently told that their loan modification had been rejected because they "were not yet in default and must be in imminent default to be considered for a

---

[1] Some of the following facts are taken from judicially noticed documents.  The Court addresses Defendants' request for judicial notice ("RJN") in greater detail below.

1    modification." (Id.)  Allegedly following BANA's instructions, Plaintiffs intentionally

2    became delinquent on their loan in order to obtain a loan modification.  (Id.)

3         On June 12, 2012, a notice of default was recorded against Plaintiffs.  (Compl.

4    ¶ 11; Defs.' RJN Ex. D.)  The notice of default was subsequently rescinded on August

5    16, 2013, and a notice of rescission of the declaration of default was recorded on the

6    same date.  (Defs.' RJN Ex. E.)

7         In July 2012, Plaintiffs filed a Chapter 13 bankruptcy petition and they allege that

8    they also began paying their monthly mortgage on time.  (Compl. ¶ 12; see also Defs.'

9    RJN Ex. F.)  In October 2012, the bankruptcy was converted to Chapter 7, and during

10   that time, Plaintiffs allege that they "continued to pay their monthly mortgage

11   payments on time, which [] were accepted by [BANA]." (Compl. ¶ 12.)

12        In November 2012, Plaintiffs allege that they "decided to liquidate their

13   retirement savings to pay the balance of their arrears on the mortgage by the end of

14   2012[,]" suggesting that they continued to make timely payments on their loan.

15   (Compl. ¶ 13.)  Throughout November 2012 and into December 2012, Plaintiffs

16   attempted to get a reinstatement quote from BANA, but were unable to obtain a

17   response.  (Id. ¶¶ 13–15.)  On December 28, 2012, Plaintiffs called BANA "to request

18   that [BANA] accept a payment of $50,000.00 over the phone so that Plaintiffs could

19   at least pay for a majority of the delinquent balance[,]" which they estimated to be

20   approximately $50,000-$60,000.  (Id. ¶ 16.)  According to Plaintiffs, the BANA

21   representative agreed to the request, and "told Plaintiffs that the $50,000 payment

22   would be accepted and credited to their account in 2012." (Id.)  At this time, Plaintiffs

23   still had not received a reinstatement quote, and thus proceeded to make the $50,000

24   payment over the phone on December 28, 2012 "to pay off the majority of their

25   delinquent balance in the year 2012 so that they could obtain the tax write-off." (Id.)

26   //

27   //

28   //

The payment was not deposited and credited by BANA until January 2013, and BANA also failed to provide Plaintiffs with a 1098 tax form reflecting the $50,000 payment.  (Compl. ¶ 17.)   In January 2013, Plaintiffs once again made a mortgage payment that BANA allegedly accepted and applied to the loan.  (Id. ¶ 18.)   Though not alleged in the complaint, it appears the bankruptcy was eventually discharged around this time on January 23, 2013.

Plaintiffs again submitted a timely mortgage payment in February 2013, but this time, their payment was returned with the explanation that the amount was "insufficient to reinstate the account."  (Id.)   Plaintiffs contacted BANA again requesting the 1098 tax form for 2012 and a quote for the amount of the remaining reinstatement balance, but BANA failed to provide both.  (Id. ¶ 19.)   They allege that they continued calling BANA weekly requesting a reinstatement quote and payment history, but BANA continued refusing their requests.  (Id. ¶ 20.)   Plaintiffs add that "although [BANA] was preventing Plaintiffs from reinstating their account by paying their delinquent balance, [BANA] was still assessing late fees and penalties on the delinquent balance each month, and would not accept their monthly mortgage payments."  (Id.)

Finally, in May 2013, Plaintiffs received a response from BANA.  The first correspondence was a mortgage statement dated May 6, 2013 stating that Plaintiffs' delinquent amount was $48,441.30 in "outstanding payments, late fees and penalties." (Id. ¶ 22.)   The second correspondence was a letter dated May 8, 2013 informing Plaintiffs that BANA "intended to foreclose on their property, and showed a reinstatement amount of $39,333.65 which included $963.88 in late fees, and stated that the last payment had been on October 1, 2012, which completely ignored the Plaintiffs' payment in December 2012 and regular monthly payment in January 2013." (Id.)   Plaintiffs subsequently sent a formal Qualified Written Request ("QWR") to BANA on June 4, 2013 demanding (1) the payment history on their loan, (2) an

accounting of their past payment of $50,000, and (3) an accounting of their penalties and fees that BANA applied.  (Id. ¶ 23.)

On July 1, 2013, BANA transferred the servicing of the loan to Nationstar. (Compl. ¶ 24.)  In the Servicing Transfer Notice, BANA acknowledged their duty to provide Plaintiffs with the payment history of their loan and an accounting through a QWR that Plaintiffs had submitted, and further acknowledged their duty to transfer all of the records of the loan to Nationstar.  (Id.)  Nationstar allegedly failed and refused to respond to Plaintiffs' June 4, 2013 QWR letter.  (Id. ¶ 25.)  Nationstar further "failed and refused to respond to the Plaintiffs' phone calls in July and August 2013 in which they requested a payment history of their Loan, an accounting of their past payment of $50,000, and to show an accounting of the penalties that [BANA] and NATIONSTAR had applied."  (Id.)

Eventually, Nationstar responded to Plaintiffs in August 2013, but like BANA, it provided conflicting information.  (Compl. ¶ 26.)  On August 8, 2013, Nationstar returned Plaintiffs' mortgage payment with a letter stating that the payment was returned because the amount was "insufficient to reinstate the account."  (Id.)  That letter also indicated that the amount needed to reinstate at the time was $59,110.12 and included "qualifying language instructing the Plaintiffs that this amount is subject to change and thus to call NATIONSTAR to obtain an up-to-date amount owed." (Id.)  A few days later, on August 14, 2013, Plaintiffs called Nationstar to verify the reinstatement amount, and the Nationstar representative told them that the reinstatement amount was $65,769.62.  (Id.)  On August 21, 2013, a Nationstar representative provided a third reinstatement quote at $61,068.46, which did not include an additional $15,248.33 in late fees, penalties, and attorney's fees; Nationstar allegedly refused Plaintiffs' demand to record these penalties and fees in writing.  (Id.)

//

//

//

13cv2530

On September 3, 2013, Plaintiffs received a correspondence from Nationstar regarding their QWR, which did not provide the information that Plaintiffs had requested in writing. (Compl. ¶ 26.)  It failed to include a full payment history and schedule reflecting all payments (including their $50,000 payment), as well as accrued interest, penalties, and late fees related to their loan. (Compl. ¶ 26.)  Nationstar also failed to provide an "accurate" reinstatement quote. (Id.)

On September 12, 2013, Plaintiffs commenced this action, asserting claims for: (1) accounting; (2) declaratory relief; (3) breach of contract; (4) violation of California Civil Code § 2943; (5) negligent loan administration; and (6) injunctive relief. According to Defendants, Plaintiffs neither listed their claims against Defendants in their bankruptcy schedules nor did they amend their schedules prior to discharge to include their claims. (Defs.' Mot. 2:24–3:2 (citing Defs.' RJN Exs. F, G).)  Defendants now move to dismiss the complaint in its entirety.  Plaintiffs oppose.

## II.   LEGAL STANDARD

The court must dismiss a cause of action for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint.  Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001).  The court must accept all allegations of material fact as true and construe them in light most favorable to the nonmoving party.  Cedars-Sanai Med. Ctr. v. Nat'l League of Postmasters of U.S., 497 F.3d 972, 975 (9th Cir. 2007).  Material allegations, even if doubtful in fact, are assumed to be true.  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  However, the court need not "necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations." Warren v. Fox Family Worldwide, Inc., 328 F.3d 1136, 1139 (9th Cir. 2003) (internal quotation marks omitted).  In fact, the court does not need to accept any legal conclusions as true.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).
//

1    "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need
2    detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his
3    'entitlement to relief' requires more than labels and conclusions, and a formulaic
4    recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555
5    (internal citations omitted).  Instead, the allegations in the complaint "must be enough
6    to raise a right to relief above the speculative level." Id.  Thus, "[t]o survive a motion
7    to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state
8    a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (citing Twombly,
9    550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual
10   content that allows the court to draw the reasonable inference that the defendant is
11   liable for the misconduct alleged." Id.  "The plausibility standard is not akin to a
12   'probability requirement,' but it asks for more than a sheer possibility that a defendant
13   has acted unlawfully." Id.  A complaint may be dismissed as a matter of law either for
14   lack of a cognizable legal theory or for insufficient facts under a cognizable theory.
15   Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 534 (9th Cir. 1984).

16       Generally, courts may not consider material outside the complaint when ruling
17   on a motion to dismiss.  Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d
18   1542, 1555 n.19 (9th Cir. 1990).  However, documents specifically identified in the
19   complaint whose authenticity is not questioned by parties may also be considered.
20   Fecht v. Price Co., 70 F.3d 1078, 1080 n.1 (9th Cir. 1995) (superceded by statutes on
21   other grounds).  Moreover, the court may consider the full text of those documents,
22   even when the complaint quotes only selected portions.  Id.  It may also consider
23   material properly subject to judicial notice without converting the motion into one for
24   summary judgment.  Barron v. Reich, 13 F.3d 1370, 1377 (9th Cir. 1994).

25

26   **III.    DISCUSSION**

27       Defendants present three grounds for dismissal: (1) Plaintiffs lack standing to
28   assert the claims in the complaint; (2) Plaintiffs are estopped from bringing this lawsuit

because it was not disclosed in their bankruptcy schedules; and (3) all of the claims are inadequately pled. The first two grounds are similar interrelated challenges based on Plaintiffs' failure to amend their bankruptcy schedule to include the claims asserted in this action. In the opposition and reply, the parties collapse these two grounds into a single analysis. Plaintiffs respond to each of these grounds in turn in their opposition. The Court addresses these arguments below.

### A.   Judicial Notice

Under Rule 201 of the Federal Rules of Evidence, a court may take judicial notice of a fact that is not "subject to a reasonable dispute" because "it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(a). Judicial notice "may be taken at any stage of the proceeding." Fed. R. Evid. 201(f). Further, judicial notice is mandatory "if requested by a party and supplied with the necessary information." Fed. R. Evid. 201(d).

Defendants request that the Court take judicial notice of various documents related to the subject property and Plaintiffs' bankruptcy proceedings. (Doc. 4-2.) Plaintiffs object to "taking Judicial Notice of the facts stated within this [Notice of Default] document on the grounds that disputed facts in public records are not properly the subject of judicial notice." (Pls.' Opp'n 9:4–10:7 (emphasis removed).) That argument appears to only be directed at Exhibit D of Defendants' request. Plaintiffs do not object to any other exhibits.

The Court does not rely on the "disputed facts" that Plaintiffs contend are contained in the notice of default in this order. Thus, that argument is moot. Because Plaintiffs do not object to Defendants' request for judicial notice on any other grounds, the Court **GRANTS** Defendants' request. See Fed. R. Evid. 201.

//

1      **B.     Judicial Estoppel**

2          "Judicial estoppel is an equitable doctrine that precludes a party from gaining an

3      advantage by asserting one position, and then later seeking an advantage by taking a

4      clearly inconsistent position." Hamilton v. State Farm Fire & Cas. Co., 270 F.3d 778,

5      782 (9th Cir. 2001) (citing Rissetto v. Plumbers & Steamfitters Local 343, 94 F.3d 597,

6      600-01 (9th Cir. 1996); Russell v. Rolfs, 893 F.2d 1033, 1037 (9th Cir.1990)).  Judicial

7      estoppel is used to bar inconsistent positions in the same litigation, and is also

8      "appropriate to bar litigants from making incompatible statements in two different

9      cases." Hamilton, 270 F.3d at 783.  Courts may consider the following three factors in

10     determining whether the doctrine of judicial estoppel applies: (1) whether "a party's

11     later position must be 'clearly inconsistent' with its earlier positions"; (2) "whether the

12     party has succeeded in persuading a court to accept that party's earlier position, so that

13     judicial acceptance of an inconsistent position in a later proceeding would create 'the

14     perception that either the first or the second court was misled'"; and (3) "whether the

15     party seeking to assert an inconsistent position would derive an unfair advantage or

16     impose an unfair detriment on the opposing party if not estopped."  Id. at 782-83

17     (quoting New Hampshire v. Maine, 532 U.S. 742, 750-51 (2001)) (internal quotation

18     marks omitted).  "In the bankruptcy context, courts have applied judicial estoppel to

19     prevent debtors who failed to disclose claims in bankruptcy proceedings from later

20     asserting those claims after their bankruptcy case has closed." Abuan v. JPMorgan

21     Chase & Co., No. 13cv1315, 2013 WL 5522221, at *2 (S.D. Cal. Oct. 3, 2013) (citing

22     Hamilton, 270 F.3d at 783) (Lorenz, J.).

23         A debtor's duty to disclose potential claims as assets continues for the duration

24     of the bankruptcy proceedings.  Hamilton, 270 F.3d at 785; United States v. Nunez,

25     419 F. Supp. 2d 1258, 1264 (S.D. Cal.2005).  "Judicial estoppel will be imposed when

26     the debtor has knowledge of enough facts to know that a potential cause of action exists

27     during the pendency of the bankruptcy, but fails to amend his schedules or disclosure

28     statements to identify the cause of action as a contingent asset." Hamilton, 270 F.3d

1   at 784; see also Hay v. First Interstate Bank of Kalispell, N.A., 978 F.2d 555, 557 (9th

2   Cir.1992) (acknowledging that "all facts were not known to [the debtor] at the time,

3   but enough was known to require notification of the asset to the bankruptcy court").

4        Defendants contend that Plaintiffs failed to include their claims asserted in this

5   action in their bankruptcy schedules even though the alleged misconduct purportedly

6   took place before the bankruptcy was discharged on January 23, 2013.  (Defs.' Mot.

7   4:20–5:2; Defs.' Reply 2:10–21.)  They also point out that Plaintiffs did not amend their

8   schedules prior to the closure of the bankruptcy to state any claims against Defendants.

9   (Defs.' Reply 2:10–21.)  As a result, Defendants argue that Plaintiffs are estopped from

10  bringing their claims in this action.  (Id.)  Plaintiffs respond that they "didn't know they

11  were going to have these claims prior to their bankruptcy discharge, or prior to filing

12  their bankruptcy." (Pls.' Opp'n 2:18–3:16.)  To support their argument, Plaintiffs direct

13  the Court's attention to paragraphs 16 through 26 of the complaint, which include

14  alleged misconduct that occurred after the January 23, 2013 bankruptcy discharge.

15  (Id.)  They also add that "Defendants provide no legal authorities in support of their

16  incorrect assertion that all of the Plaintiffs' causes of action accrued prior to their filing

17  for bankruptcy or prior to discharge, and Defendants provide no other legal analysis of

18  the Plaintiffs' claims and their rationale for asserting this."  (Id. at 3:13–16.)

19        Because Plaintiffs allege facts that occurred before and after the date of the

20  bankruptcy discharge, the Court must determine when each of Plaintiffs' claims accrued

21  before finding whether particular claims are estopped under the doctrine of judicial

22  estoppel.  Thus, the Court shall discuss below when each claim accrued and whether

23  it is estopped before reaching, if necessary, the sufficiency of each claim under Rule

24  12(b)(6).   The Court will not, however, address whether Plaintiffs' requests for

25  relief—accounting, declaratory relief, and injunctive relief—are judicially estopped

26  because these are not independent claims.

27  //

28  //

1

### 1.    Breach of Contract

Plaintiffs allege that Defendants breached several times in their complaint.  (See Compl. ¶¶ 37–41.)  The first allegation of breach relates to Defendants' alleged refusal to provide reinstatement quotes that Plaintiffs requested in November and December 2012.  (Id. ¶ 37.)  The second allegation of breach relates to Defendants' failure to properly apply the $50,000 payment to their loan and Defendants' alleged refusal to properly account for that payment in December 2012.  (Id. ¶ 38.) The third allegation of breach relates to requests for reinstatement quotes and payment history that Plaintiffs made between February 2013 through August 2013, when Defendants allegedly either refused to provide the requested information, or provided inaccurate quotes.  (Id. ¶ 39.)  Plaintiffs allege that "Defendants deliberately prevented Plaintiffs from exercising their right to reinstate by refusing to provide a reinstatement quote, or providing inaccurate quotes," presumably based on the aforementioned allegations, thereby breaching their obligations under the promissory note and deed of trust.  (See id. ¶¶ 40–41.)

Neither party discusses in any detail when the claim for breach of contract precisely accrued.  Both parties take an "all or nothing" stance regarding judicial estoppel that either all of the claims are estopped or all are not.  (Defs.' Mot. 3:7–5:2; Pls.' Opp'n 2:16–3:16.)  Based on the aforementioned allegations, and construing them in light most favorable to Plaintiffs, the Court cannot conclude that Defendants adequately demonstrate that the claim for breach of contract accrued before the bankruptcy was discharged and is judicially estopped.  See Cedars-Sanai Med. Ctr., 497 F.3d at 975.

### 2.    Violation of California Civil Code § 2943

Plaintiffs allege that their claim for violation of the California Civil Code § 2943 arises from Defendants' repeated failures and refusals to provide the requested statements between November 2012 and September 2013.  (Compl. ¶ 48.)  They also

1 add that Defendants have not yet complied with Plaintiffs' requests, at least as of when
2 the complaint was filed.  (Id.)

3       Again, neither party discusses in any detail when this claim precisely accrued.
4 Considering the allegations in the complaint and documents that the parties have thus
5 far presented, it is unclear when Plaintiffs' claim for violation of § 2943 precisely
6 accrued.  That said, it certainly is plausible that the claim accrued after the bankruptcy
7 was discharged in January 2012.  See Iqbal, 556 U.S. at 678.  Viewing the allegations
8 in light most favorable to Plaintiffs, the Court cannot conclude that Defendants
9 adequately demonstrate that this claim accrued while the bankruptcy was
10 pending—particularly in light of the provision under § 2943(b)(2) that a timely request
11 for the requested documents may be made "more than 30 days prior to the entry of the
12 decree of foreclosure"—and that the claim is judicially estopped.  See Cal. Civ. Code
13 § 2943(b)(2); see also Cedars-Sanai Med. Ctr., 497 F.3d at 975.

14

15       **3.     Negligent Loan Administration**

16       Plaintiffs allege that their negligence claim arises from Defendants' failure to
17 administer their loan properly through conduct that includes Defendants' failure to
18 apply loan payments properly, and failure to timely respond and provide accurate
19 information following a request for reinstatement quotes.  (Compl. ¶ 52.)  As discussed
20 above, Plaintiffs' requests and Defendants' failures allegedly span from November 2012
21 to September 2013.  (Id. ¶ 48.)

22       As with the previous two claims, neither party discusses in any detail when this
23 claim precisely accrued.  Considering the allegations and documents that the parties
24 have thus far presented, it is unclear when Plaintiffs' negligence claim precisely accrued,
25 but it certainly remains plausible that it accrued after the bankruptcy was discharged
26 in January 2012.  See Iqbal, 556 U.S. at 678.  Based on the aforementioned allegations,
27 and construing them in light most favorable to Plaintiffs, the Court cannot conclude
28

1   that Plaintiffs' claim for breach of contract is judicially estopped.  See Cedars-Sanai

2   Med. Ctr., 497 F.3d at 975.

3

4       **C.    Breach of Contract**

5       To allege an action for breach of contract, a plaintiff must plead: (1) the

6   existence of a contract; (2) plaintiff's performance of the contract or excuse for non-

7   performance; (3) defendant's breach of the contract; and (4) resulting damages to

8   plaintiff.  First Commercial Mortg. Co. v. Reece, 89 Cal. App. 4th 731, 745 (2001).

9   "[W]hen a written instrument is attached to the pleading and properly incorporated

10  therein by reference, the court may examine the exhibit and treat the pleader's

11  allegations of its legal effect as surplusage."  Burnett v. Chimney Sweep, 123 Cal. App.

12  4th 1057, 1064 (2004).

13      Defendants argue that Plaintiffs cannot allege that they fully performed their

14  obligations under the contract because "Plaintiffs defaulted upon the original note and

15  deed of trust."  (Defs.' Mot. 6:27–7:19.)  They also add that "Plaintiffs have not

16  sufficiently alleged damages as a result of the purported breach of contract."  (Id.)

17  Plaintiffs respond by arguing that defaulting on the loan is not the same as failure to

18  perform under the contract because the contract contemplates defaults and includes

19  provisions that bestow certain obligations on the parties when a default occurs,

20  including Defendants' duty to give Plaintiffs the opportunity and information necessary

21  to exercise their right to reinstate.  (Pls.' Opp'n 8:14–23.)  Upon reviewing the

22  allegations in the complaint and the deed of trust, the Court agrees with Plaintiffs.

23      The provision titled "Borrower's Right to Reinstate After Acceleration" in the

24  deed of trust confers the right on Plaintiffs as borrowers to have the security instrument

25  discontinued if certain conditions are met by Plaintiffs, including paying all sums that

26  would be due if no acceleration had occurred, curing any defaults, and paying all

27  expenses incurred in enforcing the security instrument.  (See Compl. Ex. B.)  Plaintiffs

28

1  allege that they attempted fulfill all of these obligations to reinstate their loan, but that

2  their attempts were unjustifiably thwarted by Defendants.

3       Additionally, Defendants do not dispute that Plaintiffs had the right to request

4  a reinstatement quote.  (See Compl. Ex. C.)  Rather, they attempt to sidestep the issue

5  by unpersuasively arguing that they did not seek judicial notice of the facts stated in the

6  notice of default, but instead only sought judicial notice of the fact that the notice

7  default "was recorded and when and where it was recorded."  (Defs.' Reply 4:12–28.)

8  The Court rejects Defendants' argument.  Plaintiffs also attached the deed of trust and

9  notice of default to their complaint, and the Court will consider the documents

10 attached to the complaint because the authenticity of at least the deed of trust and

11 notice of default are not in question.  See Fecht, 70 F.3d at 1080 n.1.  And looking to

12 these documents, the allegations in the complaint suggest that Plaintiffs tried to

13 exercise their rights by paying $50,000—which was only an estimated value because

14 Defendants refused to inform Plaintiffs what the exact deficiency amount was—towards

15 their loan in addition to monthly loan payments, but were thwarted by Defendants'

16 failure to fulfill their obligations under the reinstatement provision.  Therefore, the

17 Court finds that Defendants fail to demonstrate that Plaintiffs have insufficiently pled

18 performance for their breach-of-contract claim.  See First Commercial Mortg. Co., 89

19 Cal. App. 4th at 745.

20      In challenging the damages element, Defendants argue that there is no obligation

21 on their part to account for the lost $21,000 in tax credits because BANA had no duty

22 to credit a payment on the same date that it was submitted.  (Defs.' Mot. 7:6–19; Defs.'

23 Reply 5:1–12.)  However, as Plaintiffs suggest, these are not the only damages that

24 Plaintiffs allege.  (Pls.' Opp'n 9:12–15.)  They also allege injury by way of damage to

25 their "credit-worthiness," and the costs and fees arising from Defendants' failure to

26 perform under the contract.  (Compl. ¶ 44.)  At the very least, it appears that any

27 additional costs, fees, or penalties incurred as a result of Defendants' failure to fulfill

28 their obligations laid out in the deed of trust and notice of default amount to damages

resulting from the breach of contract. Defendants fail to address these damages in their motion and reply. Thus, viewing the allegations in light most favorable to Plaintiffs, the Court also finds that Defendants fail to demonstrate that Plaintiffs have insufficiently pled damages. See First Commercial Mortg. Co., 89 Cal. App. 4th at 745.

Accordingly, the Court **DENIES** Defendants' motion as to Plaintiffs' claim for breach of contract.

### D.    Violation of California Civil Code § 2943

California Civil Code § 2943(b) provides, in pertinent part:

> (1) A beneficiary, or his or her authorized agent, shall, within 21 days of the receipt of a written demand by an entitled person or his or her authorized agent, prepare and deliver to the person demanding it a true, correct, and complete copy of the note or other evidence of indebtedness with any modification thereto, and a beneficiary statement.

> (2) A request pursuant to this subdivision may be made by an entitled person or his or her authorized agent at any time before, or within two months after, the recording of a notice of default under a mortgage or deed of trust, or may otherwise be made more than 30 days prior to the entry of the decree of foreclosure.

Defendants argue that Plaintiffs' demands for reinstatement quotes were untimely. (Defs.' Mot. 7:21–8:11.) Based on the June 12, 2012 date when the notice of default was recorded, Defendants suggest that Plaintiffs' demands for reinstatement quotes—the earliest identified demand being made on December 3, 2012—were not timely made within two months after recording of the notice of default under § 2943(b)(2). (Id.) Plaintiffs respond by directing the Court's attention to the language of the statute that also states that the demand "may otherwise be made more than 30 days prior to entry of the decree of foreclosure." (Pls.' Opp'n 9:16–10:7.) However, as Defendants point out, Plaintiffs fail to allege "entry of the decree of foreclosure" on the subject property. (Defs.' Reply 5:13–24.) Without that allegation, Plaintiffs cannot invoke the "30 days prior" time frame to timely demand their reinstatement quotes. See Cal. Civ. Code § 2943(b)(2).

1       Accordingly, the Court **GRANTS** Defendants' motion as to Plaintiffs' claim that

2  Defendants violated California Civil Code § 2943.[2]

3

4       **E.    Negligent Loan Administration**

5       "The elements of a cause of action for negligence are (1) a legal duty to use

6  reasonable care, (2) breach of that duty, and (3) proximate cause between the breach

7  and (4) the plaintiff's injury." <u>Mendoza v. City of Los Angeles</u>, 66 Cal. App. 4th 1333,

8  1339 (1998). "The existence of a duty of care owed by a defendant to a plaintiff is a

9  prerequisite to establishing a claim for negligence." <u>Nymark v. Heart Fed. Sav. & Loan</u>

10  <u>Ass'n</u>, 231 Cal. App. 3d 1089, 1095 (1991). "The 'legal duty' of care may be of two

11  general types: (a) the duty of a person to use ordinary care in activities from which

12  harm might reasonably be anticipated, or (b) an affirmative duty where the person

13  occupies a particular relationship to others." <u>McGettigan v. Bay Area Rapid Transit</u>

14  <u>Dist.</u>, 57 Cal. App. 4th 1011, 1016-17 (1997) (internal quotation marks omitted). "In

15  the first situation, [the defendant] is not liable unless he is actively careless; in the

16  second, he may be liable for failure to act affirmatively to prevent harm." <u>Id.</u>

17       "[A]s a general rule, a financial institution owes no duty of care to a borrower

18  when the institution's involvement in the loan transaction does not exceed the scope

19  of its conventional role as a mere lender of money." <u>Nymark</u>, 231 Cal. App. 3d at 1096.

20  "Liability to a borrower for negligence arises only when the lender 'actively participates'

21  in the financed enterprise 'beyond the domain of the usual money lender.'" <u>Wagner v.</u>

22  <u>Benson</u>, 101 Cal. App. 3d 27, 35 (1980) (quoting <u>Connor v. Great W. Sav. & Loan</u>

23  <u>Ass'n</u>, 69 Cal. 2d 850, 864 (1968)).

24  //

25

26          [2] Plaintiffs also argue that Defendants' challenge is "clearly a factual defense" that is

27  inappropriate under Rule 12(b)(6). (Pls.' Opp'n 9:24–10:7.) It is unclear what Plaintiffs mean by this.
Under Rule 12(b)(6), all the factual allegations in the complaint are taken as true and construed in

28  light most favorable to Plaintiffs, and as discussed above, judicially noticed documents are also within
the scope of consideration under the appropriate circumstances. Thus, the Court rejects Plaintiffs'
"factual defense" argument.

1    The economic loss rule "prevent[s] the law of contract and the law of tort from

2  dissolving one into the other." <u>Robinson Helicopter Co., Inc. v. Dana Corp.</u>, 34 Cal.

3  4th 979, 988 (2004) (internal quotations marks omitted). The rule generally bars tort

4  actions for contract breaches, thereby limiting contracting parties to contract damages.

5  <u>Aas v. Super. Ct.</u>, 24 Cal. 4th 627, 643 (2000). It precludes recovery for "purely

6  economic loss due to disappointed expectations," unless the plaintiff "can demonstrate

7  harm above and beyond a broken contractual promise." <u>Robinson Helicopter</u>, 34 Cal.

8  4th at 988. In other words, "[a] person may not ordinarily recover in tort for the breach

9  of duties that merely restate contractual obligations." <u>Aas</u>, 24 Cal. 4th at 643.

10  "[C]onduct amounting to a breach of contract becomes tortious only when it also

11  violates a duty independent of the contract arising from principles of tort law."

12  <u>Robinson Helicopter</u>, 34 Cal. 4th at 989.

13    Defendants challenge the sufficiency of Plaintiffs' negligence claim on two

14  grounds: (1) Defendants did not owe a duty to Plaintiffs; and (2) the economic loss

15  doctrine bars Plaintiffs' negligence claim. (Defs.' Mot. 8:17–10:14.) Plaintiffs address

16  the former issue regarding Defendants' duty of care in their opposition, but completely

17  fail to discuss the latter of whether their claim is barred by the economic loss rule.

18  Naturally, they fail to direct the Court to any factual allegations in the complaint that

19  would suggest that they are not seeking pure economic losses as their injury, and they

20  also fail to provide any legal analysis discussing whether the injuries that they do allege

21  satisfy the injury requirement despite the economic loss rule. The Court interprets

22  Plaintiffs' failure to respond to Defendants' argument regarding the economic loss rule

23  as Plaintiffs conceding to its merits. Therefore, unless Plaintiffs can show otherwise,

24  their negligence claim is barred by the economic loss rule. <u>See Robinson Helicopter</u>,

25  34 Cal. 4th at 988.

26    Accordingly, the Court **GRANTS** Defendants' motion as to Plaintiffs' claim for

27  negligent loan administration.

28  //

**F.      Accounting**

Accounting "is not an independent cause of action but merely a type of remedy and an equitable remedy at that." <u>Batt v. City & Cnty. of San Francisco</u>, 155 Cal. App. 4th 65, 82 (2007).  An accounting may be brought to compel a defendant to account to a plaintiff for money (1) where a fiduciary duty exists, or (2) where no fiduciary duty exists, "the accounts are so complicated that an ordinary legal action demanding a fixed sum is impracticable." <u>Civic W. Corp. v. Zila Indus., Inc.</u>, 66 Cal. App. 3d 1, 14 (1977). A showing that "some balance is due the plaintiff that can only be ascertained by an accounting" is also required.  <u>Teselle v. Mcloughlin</u>, 173 Cal. App. 4th 156, 179 (2009). "An action for accounting is not available where the plaintiff alleges the right to recover a sum certain or a sum that can be made certain by calculation." <u>Id.</u>

Here, as Defendants point out, Plaintiffs fail to allege that an amount of money is due to Plaintiffs from Defendants.  (Defs.' Reply 3:14–19.)  Therefore, Plaintiffs' request for an accounting is insufficiently pled.  <u>See</u> <u>Teselle</u>, 173 Cal. App. 4th at 179. Accordingly, the Court **GRANTS** Defendants' motion as to Plaintiffs' request for an accounting.

**G.      Declaratory and Injunctive Relief**

"Declaratory relief is not an independent cause of action or theory of recovery, only a remedy." <u>Naranjo v. SBMC Mortg.</u>, No. 11-cv-2229, 2012 WL 3030370, at *4 (S.D. Cal. July 24, 2012) (citing 28 U.S.C. §§ 2201, 2202) (Lorenz, J.); <u>see</u> <u>McClain v. Octagon Plaza, LLC</u>, 159 Cal. App. 4th 784, 800 (2008).  Similarly, under both federal and California law, "an injunction is a remedy, not a claim in and of itself." <u>Sullivan v. JP Morgan Chase Bank, NA</u>, 725 F. Supp. 2d 1087, 1099 (E.D. Cal. 2010); <u>see</u> <u>Shamsian v. Atl. Richfield Co.</u>, 107 Cal. App. 4th 967, 985 (2003).

In challenging Plaintiffs' requests for declaratory and injunctive relief, Defendants presume that all of the other claims are defective, thus concluding that there is no basis for either of these requests for relief. (Defs.' Mot. 11:7–18.)  However, as discussed

above, Defendants failed to demonstrate that Plaintiffs' breach-of-contract claim is subject to dismissal. Because there is a remaining independent claim, the Court rejects Defendants' argument, and **DENIES** Defendants' motion as to Plaintiffs' requests for declaratory and injunctive relief.

### H.    Specific Performance

Plaintiffs do not assert an independent claim for specific performance in the body of their complaint, but yet Defendants move to dismiss one probably because Plaintiffs include a seventh claim for specific performance among the claims listed in the caption of their complaint. Without citing to any specific portion of the complaint, Defendants explain that "[b]eyond the fact that there has been no breach of contract on which to recover, Plaintiffs are unable to obtain specific performance as a remedy to a breach of contract[.]" (Defs.' Mot. 10:16–11:4.) In their opposition, Plaintiffs appear to recognize that they did not assert the claim in the body of the complaint, requesting leave to amend their complaint to "re-title" a non-existent seventh claim for "Breach of Contract - Specific Performance," despite taking the position that their request for specific performance is "sufficiently stated." (Pls.' Opp'n 15:2–12.)

Because Plaintiffs do not actually assert a claim for specific performance, there is no need for the Court to address it at this time. Thus, the Court **DENIES AS MOOT** Defendants' motion as to specific performance. That said, because leave to amend should be freely given, the Court **GRANTS** Plaintiffs' request for leave to amend their complaint to include a claim for specific performance. See Fed. R. Civ. P. 15(a).

## IV.    CONCLUSION & ORDER

In light of the foregoing, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion to dismiss. (Doc. 4.) Specifically, the Court **GRANTS WITH LEAVE TO AMEND** Defendants' motion as to Plaintiffs' claims for violation

1  of California Civil Code § 2943, negligent loan administration, and accounting; and the

2  Court **DENIES** the motion as to the remaining claims.  If Plaintiffs choose to amend

3  their complaint, they may do so no later than **February 18, 2014**.

4     **IT IS SO ORDERED.**

5

6  **DATE: January 28, 2014**

7     _____

8     **HON. THOMAS J. WHELAN**
       United States District Court
9     Southern District of California

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28