**AUDREY POWERS THORNTON (SBN 118870)**
**CHARLES E. KOLLER (SBN 151601)**
**THORNTON ~ KOLLER**
2100 Palomar Airport Road, Ste. 213
Carlsbad, CA 92011
Tel. 760-688-0600
Fax 760-688-0610
Audrey@thorntonkoller.com

Attorneys for Plaintiffs
Rita Mahoney and Eric Johnston

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RITA MAHONEY, an individual, and ERIC JOHNSTON, an individual, <br><br> Plaintiff, <br> vs. <br><br> BANK OF AMERICA, NATIONAL ASSOCIATION; NATIONSTAR MORTGAGE LLC; and DOES 1 to 100, Inclusive, <br> Defendants. | CASE NO. 13-cv-2530-W (JMA) <br><br> The Honorable Thomas J. Whelan <br> Courtroom 3C <br><br> **FIRST AMENDED COMPLAINT FOR:** <br> **1. BREACH OF CONTRACT** <br> **2. DECLARATORY RELIEF** <br> **3. NEGLIGENT LOAN ADMINISTRATION** <br> **4. INJUNCTIVE RELIEF** <br> **5. SPECIFIC PERFORMANCE** <br><br><br> Action Filed: September 12, 2013 <br> Removal Date: October 21, 2013 <br> Trial Date: None Set |

Plaintiffs, RITA MAHONEY, an individual, and ERIC JOHNSTON, an individual, (hereinafter, "Plaintiffs") are informed and believe, and thereon alleges, against defendants, and each of them, as follows:

1
2

## PARTIES

3
4
5

1.      Plaintiff, RITA MAHONEY, an individual, at all times relevant has been a resident of the County of San Diego, State of California and owned and resided at the real property at issue herein located at 12355 Figtree St., San Diego, CA (hereinafter referred to as the "Property")..

6
7
8

2.      Plaintiff, ERIC JOHNSTON, an individual, at all times relevant has been a resident of the County of San Diego, State of California, and owned and resided at the real property at issue herein located at 12355 Figtree St., San Diego, CA (hereinafter referred to as the "Property").

9
10
11
12

3.      Defendant BANK OF AMERICA, NATIONAL ASSOCIATION (hereinafter, "BOA") at all times herein mentioned conducted business in the County of San Diego, State of California. Plaintiffs are informed and believe that BOA also is doing business under the name "BANK OF AMERICA HOME LOANS SERVICING, LP".

13
14

4.      Defendant NATIONSTAR MORTGAGE, LLC (hereinafter, "NATIONSTAR") at all times herein mentioned conducted business in the County of San Diego, State of California.

15
16
17
18
19
20
21

5.      The true names and capacities of Defendants, whether individual, corporation, partnership, associate, or otherwise, sued herein as DOES 1 through 100, inclusive, are presently unknown to Plaintiffs, and therefore sue these defendants by such fictitious names.  Plaintiffs are informed and believe and thereon allege that each of the DOE Defendants may be responsible in some manner for the events and happenings herein referred to and legally concurrently caused the damages hereinafter alleged.  Plaintiffs will seek to amend this Complaint to set forth the true names and capacities of any discovered DOE Defendants when ascertained.

22
23
24

6.      Plaintiffs are informed and believe and thereon allege that, at all times herein mentioned each of the Defendants sued herein was the agent and/or employee of each of the remaining Defendants and was, at all times mentioned, acting within the purpose and scope of

25

said agency, partnership, employment, and/or relationship, and with the consent, authorization, permission, and/or ratification of co-defendants, and each of them.

**GENERAL ALLEGATIONS**

7.      Plaintiffs are the owners of real property, the residence at issue herein, known as 12355 Figtree Street, San Diego, California, 92131, (hereinafter, "the Subject Property"). The legal description is as follows:

PARCEL 1:

LOT 48 OF SPRING CANYON, IN THE CITY OF SAN DIEGO, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO THE MAP THEREOF NO. 13390, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, JANUARY 26, 1997.

PARCEL 2:

A NON-EXCLUSIVE EASEMENT IN, OVER, ALONG THROUGH AND ACROSS ANY PORTION OF ANY LOT OR LOTS OF THE ABOVE-REFERENCED SUBDIVISION MAP ("PARCEL 2 BURDENED LOT(S)"), LOCATED BETWEEN ANY PORTION OF THE BACK AND/OR SIDE FENCE OR WALLS SURROUNDING THE LOT REFERENCED IN PARCEL 1 ABOVE ("PARCEL 2 BENEFITTED LOT") AND THE REAR OR SIDE BOUNDARY LINE(S) OF THE PARCEL 2 BURDENED LOT(S) AND THE BOUNDARY LINE(S) OF THE PARCEL 2 BENEFITTED LOT ("BENEFITTED YARD EASEMENT ARE"), FOR THE PURPOSE OF THE INSTALLATION, MAINTENANCE, REPAIR AND REPLACEMENT OF ANY FENCING OR WALLS LOCATED WITHIN THE BENEFITTED YARD EASEMENT AREA AND NON-STRUCTURAL LANDSCAPING IMPROVEMENTS WITHIN THE BENEFITTED YARD EASEMENT AREA BY THE OWNER OF THE PARCEL 2 BENEFITTED LOT, AS REQUIRED UNDER THE DECLARATION AND SUBJECT TO THE RIGHT OF THE OWNER(S) OF THE PARCEL 2 BURDENED LOT(S) TO ENTER THE BENEFITTED YARD EASEMENT ARE AS MAY BE NECESSARY TO MAINTAIN OR REPAIR ANY PORTIONS OF ANY FENCE AND/OR WALLS(S) SURROUNDING THE PARCEL 2 BURDENED LOT(S), AS REQUIRED UNDER THE DECLARATION.   THE EASEMENT GRANTED HEREIN SHALL BE FOR THE USE OF THE GRANTEE, ITS RESPECTIVE SUCCESSORS IN INTEREST AND ASSIGNS AND SHALL BURDEN THE PARCEL 2 BURDENED LOT(S) AND BE BINDING ON THE OWNER(S) THEREOF AND THEIR RESPECTIVE SUCCESSORS IN INTEREST AND ASSIGNS.

PARCEL 3:

A NON-EXCLUSIVE EASEMENT, IN COMMON WITH OTHER OWNERS, FOR INGRESS, EGRESS, USE AND ENJOYMENT, OVER, IN, TO AND THROUGHOUT THE ASSOCIATION PROPERTY (AS DESCRIBED IN THE DECLARATION) FOR THE PURPOSE OF MAINTENANCE OF ANY FENCE OR WALL SURROUNDING THE LOT DESCRIBED IN PARCEL 1 ABOVE, AS REQUIRED UNDER THE DECLARATION, WHICH EASEMENT IS APPURTENANT TO SUCH LOT.

APN 320-192-10-00

8.   In March 2004, Plaintiffs obtained a purchase-money loan (the "Loan") from the lender Countrywide  Bank  in the amount of $960,000.00, which was secured by a Deed of Trust on the Subject Property.  The Deed of Trust was recorded with the San Diego County Recorder's Office on April 2, 2004. A true and correct copy of the Promissory Note ("Note") is attached hereto as Exhibit "A" and incorporated herein by this reference.   A true and correct copy of the Deed of Trust, ("DOT") is attached hereto as Exhibit "B" and incorporated herein by this reference.

9.   Despite a dramatic decrease in their income due to Mrs. Mahoney losing her job in 2008, Plaintiffs paid their monthly mortgage on time every month. At some point in time unknown to Plaintiffs, BOA acquired Plaintiffs' Loan from Countrywide.  BOA is subject to the same obligations arising out of the Note and DOT as COUNTRYWIDE, in addition to BOA's own liabilities. BOA, operating as BAC Home Loans Servicing, LP, became the servicer of the Plaintiffs' home Loan.

10.   In 2011, the Plaintiffs' Loan changed from a fixed interest rate, interest-only loan to an adjustable rate mortgage, and Plaintiffs' monthly mortgage payments were due to change from $3,800 per month to $5,900.00 per month.    Plaintiffs made all payments in a timely manner, but continued to struggle to make the unduly high payments. In a good faith effort to remain current on the Loan and satisfy their obligations to BOA, Plaintiffs met with BOA loan representatives at a mortgage modification workshop in or about June 2011 to request that the Loan be restructured, and were told they were excellent candidates for a loan modification. However,

subsequently they were informed by the BOA representative that that their loan modification had been rejected by the investor because Plaintiffs were not yet in default and must be in imminent default to be considered for a modification. Plaintiffs followed the instructions of BOA and intentionally became delinquent on the Loan so they could obtain the loan modification. Plaintiffs met with a BOA loan modification specialist for 6 1/2 hours in August 2011 and worked on their loan modification, which was then verbally approved by the BOA representative, and submitted to BOA. Between August 2011 and May 2012, BOA demanded that Plaintiffs submit their paperwork five (5) more times. In May 2012, BOA formally rejected the Plaintiffs' loan modification, citing "bad credit"!   The Plaintiffs had no other late or delinquent credit accounts.

11.     On or about June 12, 2012 Defendant BOA sent the Plaintiffs a Notice of Default and Election to Sell, and began foreclosure proceedings against the Plaintiffs. A true and correct copy of the June 12, 2012 Notice of Default and Election to Sell , ("NOD"), is attached hereto as Exhibit "C".

12.     On or about July 2012, Plaintiffs filed a Chapter 13 bankruptcy petition and began paying their monthly mortgage on time in July 2012. The bankruptcy was converted to Chapter 7 in October 2012 and Plaintiffs continued to pay their monthly mortgage payments on time, which payments were accepted by BOA.

13.     In November 2012, Plaintiffs decided to liquidate their retirement savings to pay the balance of their arrears on the mortgage by the end of 2012. It was important that the payment on the Loan be made in the 2012 tax year, so that they could obtain the tax write-off for the amount of interest they paid, which they would need to offset the monetary penalty for liquidating their savings - a 401K plan.  Plaintiffs called BOA in November 2012 and asked for a reinstatement quote that would give them the balance of the delinquent amount and what amount would bring the Loan current. BOA informed them that in 72 hours BOA would send them the reinstatement quote by mail and fax. By December 2012, the Plaintiffs had received nothing from BOA despite

calling repeatedly for their reinstatement quote.

14.     On December 3, 2012 Plaintiffs sent BOA a written request for a reinstatement quote stating the amount needed to bring their Loan current before the end of 2012. A true and correct copy of the Plaintiffs' written request dated December 3, 2012 is attached hereto as Exhibit "D". BOA did not respond to the Plaintiffs' request.

15.     On December 18, 2012 Plaintiffs sent BOA a written request for a reinstatement quote stating the amount needed to bring their Loan current before the end of 2012. A true and correct copy of the Plaintiffs' written request dated December 18, 2012 is attached hereto as Exhibit "E". BOA did not respond to the Plaintiffs' request.

16.     Finally, on December 28, 2012 Plaintiffs estimated the amount needed to reinstate their Loan and bring it current was approximately $50,000 - $60,000, and called BOA to request that BOA accept a payment of $50,000.00 over the phone so Plaintiffs could at least pay the majority of the delinquent balance. The BOA representative agreed, and told Plaintiffs that the $50,000 payment would be accepted and credited to their account in 2012. BOA still did not give them a reinstatement quote. Thus, Plaintiffs relied upon the representation made by the BOA agent, and made a payment by phone of $50,000.00 on December 28, 2012 to pay off the majority of their delinquent balance in the year 2012 so that they could obtain the tax write-off.

17.     However, the Plaintiffs' payment of $50,000.00 was not cashed and credited by BOA until the next year - in January 2013,  (please find attached a true and correct copy of Plaintiffs' $50,000.00 payment by electronic check attached hereto as Exhibit "F") and BOA failed to provide Plaintiffs with a 1098 tax form reflecting that payment. In January 2013, Plaintiffs contacted BOA requesting both the 1098 tax form for the 2012 $50,000 payment, and a quote for the amount of the remaining reinstatement balance. BOA failed to provide either to the Plaintiffs. BOA sent the Plaintiffs their "Annual Tax and Interest Statement" and  "2012 Form 1098" which did not show the Plaintiffs' $50,000 payment.

18.     Plaintiffs made a timely mortgage payment in January 2013 which BOA accepted, cashed and applied to the Loan repayment. However, in February 2013 Plaintiffs mailed their monthly mortgage payment to BOA and BOA returned the check, with a statement that the reason the monthly mortgage payment was being returned was because the amount was "insufficient to reinstate the account". However, BOA still did not inform Plaintiffs of the amount of their past due balance in that communication. A true and correct copy of the Plaintiffs' February 1, 2013 mortgage payment check and correspondence from BOA returning it is attached as Exhibit "G".

19.     In February 2013, Plaintiffs contacted BOA again requesting both the 1098 tax form for 2012 and a quote for the amount of the remaining reinstatement balance. BOA failed to provide either to the Plaintiffs.

20.     For the next four months, Plaintiffs continued to make weekly telephone calls to BOA to request a reinstatement quote and payment history, yet BOA refused to provide Plaintiffs with a reinstatement quote so that they could pay BOA the remaining delinquent balance in addition to their regular mortgage payment, and refused to provide a payment history showing their $50,000 payment or a 1098 tax form for 2012. In the meantime, although BOA was preventing Plaintiffs from reinstating their account by paying their delinquent balance, BOA was still assessing late fees and penalties on the delinquent balance each month, and would not accept their monthly mortgage payments.

21.     Plaintiffs contend that all late fees, attorneys fees and penalties assessed by BOA and charged to the delinquent balance each month are invalid and constitute a breach of the contract with the Plaintiffs, and that BOA is estopped from assessing these charges because it has prevented the Plaintiffs from reinstating their mortgage to bring it current.

22.     In late May 2013, BOA sent Plaintiffs two conflicting pieces of correspondence.  The first was a May 6, 2013 mortgage statement showing their delinquent amount was *$48,441.30* in outstanding payments, late fees and penalties. A true and correct copy of the BOA May 6, 2013

statement is attached as Exhibit "H". The second was a letter dated May 8, 2013 informing Plaintiffs that BOA intended to foreclose on their property, and showed a reinstatement amount of *$39,333.65* which included $963.88 in late fees, and stated that the last payment had been on October 1, 2012, which completely ignored the Plaintiffs' $50,000.00 payment in December 2012 and regular monthly payment in January 2013. A true and correct copy of the BOA May 8, 2013 letter is attached as Exhibit "I".

23.    Plaintiffs sent a formal Qualified Written Request ("QWR") to Bank of America on June 4, 2013 demanding the payment history of their Loan, and an accounting of their past payment of $50,000, and to show an accounting of the penalties and fees that BOA had applied. A true and correct copy of the Plaintiffs' June 4, 2013 QWR letter is attached as Exhibit "J". BOA failed and refused to respond to this QWR.

24.    BOA transferred the servicing of the Plaintiffs' Loan to NATIONSTAR on July 1, 2013. A true and correct copy of the Servicing Transfer Notice dated June 10, 2013 is attached as Exhibit "K".  In the Servicing Transfer Notice, BOA acknowledged their duty to provide Plaintiffs with the payment history of their Loan and an accounting through a QWR sent to BOA, and further acknowledged their duty to transfer all records of the Plaintiffs' Loan to NATIONSTAR. A true and correct copy of correspondence from NATIONSTAR giving Plaintiffs notice of their new servicing agreement is attached hereto as Exhibit "L".

25.    When NATIONSTAR took over servicing of the Plaintiffs' Loan it failed and refused to respond to the Plaintiffs' June 4, 2013 QWR letter. A copy of the Plaintiffs' June 4, 2013 QWR letter was re-sent to NATIONSTAR on August 2, 2013, (a true and correct copy of the Plaintiffs' August 2, 2013 letter to NATIONSTAR is attached as Exhibit "M"), and NATIONSTAR further failed and refused to respond to the Plaintiffs' phone calls in July and August 2013 in which they requested a payment history of their Loan, an accounting of their past payment of $50,000, and to show an accounting of the penalties and fees that BOA and NATIONSTAR had applied.

26.    In  August  2013,  NATIONSTAR  gave  the  Plaintiffs  different  conflicting

reinstatement amounts in writing and over the phone. NATIONSTAR thereby prevented the Plaintiffs from being able to accurately reinstate their Loan. On August 8, 2013, NATIONSTAR returned the Plaintiffs' monthly mortgage payment with an attached letter stating that the reason the monthly mortgage payment was being returned was because the amount was "insufficient to reinstate the account" and provided an amount to reinstate of *"$59,110.12"* with qualifying language instructing the Plaintiffs that this amount is subject to change and thus to call NATIONSTAR to obtain an up-to-date amount owed. (A true and correct copy of NATIONSTAR's August 8, 2013 letter is attached as Exhibit "N".) A few days after receiving this letter, Plaintiffs called NATIONSTAR on August 14, 2013, to verify the reinstatement amount. NATIONSTAR's representative stated the reinstatement amount was *$65,769.62*.  On August 21, 2013, NATIONSTAR's representative gave Plaintiffs a third conflicting reinstatement quote of *$61,068.46*, but stated that this amount did not include an additional *$15,248.33* in the late fees, penalties, and attorney's fees being assessed by NATIONSTAR. When Plaintiffs demanded an accounting of these penalties and fees in writing, NATIONSTAR refused. In September 3, 2013, Plaintiffs received correspondence from NATIONSTAR regarding their QWR, which correspondence was back-dated to August 21, 2013 and which failed to provide the information that Plaintiffs had requested in writing, did not provide a full payment history and schedule reflecting all payments (including an accounting of their $50,000.00 payment), accrued interest, penalties and late fees in relation to loan number 4369568/610473209, nor did it provide an accurate reinstatement quote.

27.     Defendants NATIONSTAR have continued to refuse to provide the Plaintiffs with a 1098 acknowledging and reflecting the Plaintiffs' payment of $50,000. In January 2014 NATIONSTAR sent the Plaintiffs their "Annual Tax and Interest Statement" and  "2013 Form 1098" which did not show the Plaintiffs' $50,000 payment.

*//*

*//*

**FIRST CAUSE OF ACTION**

**BREACH OF CONTRACT**

(Against All Defendants)

28.      Plaintiffs re-allege and incorporate by reference all allegations of the foregoing paragraphs as though fully set forth herein.

29.      Plaintiffs entered into a written contract with Defendants comprised of the Note, (Exh. "A"), DOT (Exh. "B") and Servicing Agreement, (Exh.'s "K", "L").  Under the terms of the Note, DOT, and Servicing Agreement on Plaintiffs' property, BOA, and subsequently NATIONSTAR, had the obligation to administer Plaintiffs' Loan properly, specifically to properly apply their Loan payments so that if Plaintiffs asked for reinstatement quotes, Plaintiffs would be provided timely and accurate figures. As described above, Defendants had recorded and served Plaintiffs with a Notice of Default and Election to Sell Under Deed of Trust on June 12, 2012. (NOD Exh. "C".) The NOD provided that Plaintiffs had the right to demand a written and itemized reinstatement quote from Defendants. Under the terms of the contract with Defendants, the Plaintiffs had the right to reinstate and bring their Loan current, and have enforcement of the security instrument discontinued, (see DOT, Exh. "B", par. 19, p. 11), which would terminate all fees and charges arising from their delinquency.

30.      In November and December 2012, Plaintiffs, by phone and in writing, advised Defendants they wanted to exercise their right to reinstate, and repeatedly requested reinstatement quotes on their Loan, a quote of the amount needed so they could bring their Loan current.  (See, Exh.'s "D" and "E"). Defendants refused to provide those reinstatement quotes. This was a breach of Defendants' obligations under the contract.

31.      In December 2012, Plaintiffs made a $50,000.00 payment on their Loan to BOA which was not properly applied by BOA as a payment, and BOA refused to properly account for said payment. This was a breach of Defendants' obligations under the contract.

32.     In February 2013 through August 2013, Plaintiffs, by phone and in writing, repeatedly requested reinstatement quotes on their Loan, including a quote of the amount needed so they could bring their Loan current, and a payment history.  (See, Exh.'s "J" and "M".) Defendants refused to provide those quotes, or Defendants provided inaccurate quotes.  The quotes were inaccurate because they conflicted with each other. The quotes were also inaccurate because they were too high.  They were too high because Defendants had not properly allocated all the prior payments Plaintiffs had made on their Loan.   They were too high because Defendants had assessed improper penalties, late payment fees, and attorney's fees to the delinquent balance. This was a breach of Defendants' obligations under the Note and DOT.

33.     Defendants deliberately prevented Plaintiffs from exercising their right to reinstate by refusing to provide a reinstatement quote, or providing inaccurate quotes.  This was a breach of Defendants' obligations under the Note and DOT.

34.     Under the terms of the Promissory Note, (Exh. "A"), DOT (Exh. "B") and Servicing Agreements, (Exh. "K", "L"), Defendants were required to administer and service the Loan and provide loan accountings to the Plaintiffs. Pursuant to California Civil Code 2943, and under common law, Defendants had a duty to keep the Plaintiffs reasonably informed of the balance of their Loan and what they owed to Defendants under the Loan.  Defendants knew Plaintiffs were relying on them to correctly allocate their Loan payments and provide accurate figures on the receipt and application of all Loan payments, and all charges made by Defendant to the Loan balance including accrued interest, penalties, late payment fees, attorney's fees, and had a duty to provide an annual accounting of the Loan to the Plaintiffs. Defendants failed to perform their duties to the Plaintiffs under the contract.

35.     The current status of the Plaintiffs' Loan, changes to the balance owed, changes to the delinquent balance, and the amount of money due from Plaintiffs to Defendants to reinstate the Loan as current, is unknown to Plaintiffs and cannot be ascertained without an accounting of all of Plaintiffs' Loan payments, and all charges made by Defendants to the Loan balance including

accrued interest, penalties, late payment fees, and attorney's fees, including an accounting of the $50,000.00 paid in December 2012. Plaintiffs have demanded an accounting of the aforementioned transactions   from Defendants but Defendants have failed and refused, and continue to fail and refuse, to render such an accounting

36.    Plaintiffs have performed all duties and obligations they had in relation to their contract with Defendants except for any duties and obligations which they were prevented or excused from performing.

37.    Plaintiffs contend that under the Note and DOT, all late fees, attorney's fees and penalties assessed by BOA and NATIONSTAR and charged to the delinquent balance each month since the Plaintiffs tried to reinstate their Loan in November 2012 are invalid, a breach of the contract with the Plaintiffs, and BOA and NATIONSTAR are estopped from making these charges because they have prevented the Plaintiffs from reinstating their Loan to bring it current.

38.    As a direct and proximate result of the foregoing breaches by BOA, NATIONSTAR and Does 1-100, Plaintiffs were damaged by Defendants' breach of this contract. As a proximate result of the aforementioned acts and omissions by Defendants, and each of them, Plaintiffs have suffered and continue to suffer substantial damages to their credit-worthiness, Plaintiffs have lost more than $21,000 in tax credits if BOA had properly credited the $50,000 12/28/12 payment, and Plaintiffs have incurred costs and fees arising from Defendants' failure to perform under the contract.  As a proximate result of the breach of contract by Defendants, and each of them, Plaintiffs have suffered and continue to suffer substantial damages in an amount not less than $500,000.00.

39.    As a further proximate result of the breaches of Defendants, Plaintiffs have been required to expend money and to incur obligations for their attorney's fees and have been forced to pursue the instant legal action to exercise their rights under the contract, if Plaintiffs are the prevailing party Plaintiffs are therefore entitled to an awarded of reasonable attorney's fees and costs

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**SECOND CAUSE OF ACTION**

**<u>DECLARATORY RELIEF</u>**

(Against All Defendants)

40.    Plaintiffs re-allege and incorporate by reference all allegations of the foregoing paragraphs as though fully set forth herein.

41.    The allegations made by Plaintiffs, above, establish that an actual controversy has arisen and now exists between Plaintiffs and Defendants concerning their respective rights and duties under the Promissory Note, (Exh. "A"), DOT (Exh. "B") and Servicing Agreement, (Exh. "K", "L"),  Plaintiffs contend that under the Promissory Note, DOT and Servicing Agreement, all late fees, attorney's fees and penalties assessed by BOA and NATIONSTAR and charged to the delinquent balance each month since the Plaintiffs tried to reinstate their Loan in November 2012 are invalid, are a breach of the contract with the Plaintiffs, and that BOA and NATIONSTAR are estopped from assessing these charges because they have prevented the Plaintiffs from reinstating their Loan to bring it current. Defendants contend that Plaintiffs are in default on their Loan owing a substantial amount in  late fees, attorney's fees and penalties assessed by Defendants and that Defendants are entitled to enforce the DOT.

42.    The allegations made by Plaintiffs, above, establish that an actual controversy has arisen and now exists between Plaintiffs and Defendants concerning Defendants' right to payment of the above-referenced amounts, and their right to an interest in the title to the Subject Property.

43.    A judicial declaration is necessary and appropriate at this time; accordingly, Plaintiffs request the Court to issue a determination of the respective liabilities of Plaintiffs and Defendants BOA and NATIONSTAR.

//

//

**THIRD CAUSE OF ACTION**

**NEGLIGENT LOAN ADMINISTRATION**

(Against All Defendants)

44.     Plaintiffs re-allege and incorporate by reference all allegations of the foregoing paragraphs as though fully set forth herein.

45.     Defendants owed Plaintiffs a duty to administer their Loan properly, in particular to apply their Loan payments properly so that, if they asked for a reinstatement quote, they would be provided accurate figures in a timely fashion.  Defendants further owed Plaintiffs a duty of care in the administration of their loan payment when, on December 28, 2012 the  BOA representative agreed to accept the Plaintiffs' payment of $50,000.00 over the phone with the understanding and explicit promise to the Plaintiffs that their $50,000 payment would be accepted and credited to their account in 2012 so that they could obtain the tax write-of and would pay off the majority of their delinquent balance in the year 2012, and Plaintiffs relied upon that representation. This duty of care arose from several sources.  First, the Defendants' duty of care to administer the Plaintiffs' loan properly was created by: a) Civil Code section 2943, b) HUD Handbook 4350.4, Chapter 2, "Loan Administration: Responsibilities of Mortgage Servicing", c) The Real Estate Settlement Procedures Act of 1974 (RESPA) (12 U.S.C. 2601 et seq.) and Regulation X, 78 Fed. Reg. 10696; d) the duty to timely process their 12/28/12 payment arose under the statutory duties of care a bank owes to a depositor under the Commercial Code Section 4202, and common law duties of care as set forth below.  Second, because Defendants stood in a fiduciary relationship to Plaintiffs and in a special relationship of trust and confidence, it owed Plaintiffs a duty to protect their interests.  Third, the duty existed under general negligence law because:

a.   Any negligent loan administration was intended to affect Plaintiffs.  The Plaintiffs relied on Defendants' statements of what they owed under the Loan to decide whether to

keep their property and reinstate their Loan by bringing it current. Defendants knew Plaintiffs were relying on them to correctly allocate their Loan payments and provide them accurate figures on what they owed.

b. Harm to Plaintiffs was foreseeable. If Defendants did not accurately administer Plaintiffs' Loan and accurately allocate Plaintiffs' Loan payments, Plaintiffs would be given reinstatement quotes or payoff quotes that they could not pay. As a result, Plaintiffs could lose their property. If Defendants did not give Plaintiffs accurate reinstatement quotes, the Loan would remain in default with an outstanding delinquent balance, which would allow Defendants to assess penalties and fees. As a result, Plaintiffs could lose their property.

c. Harm to Plaintiffs was certain. Defendants did not give Plaintiffs accurate reinstatement quotes, the Loan remained in default and allowed Defendants to continue assessing further penalties and fees, causing damage to Plaintiffs' credit-worthiness. Defendants did not accurately administer their Loan and accurately allocate Plaintiffs' Loan payments, thus Plaintiffs lost more than $21,000.00 in tax credits.

d. There was a close connection between Defendants' conduct and Plaintiffs' injury. Because Defendants did not accurately administer the Loan and accurately allocate Plaintiffs' payments, or provide Plaintiffs with timely and accurate reinstatement quotes, Plaintiffs suffered substantial damages to their credit-worthiness, Plaintiffs have lost more than $21,000 in tax credits which they would not have had to pay if BOA had properly credited the $50,000 12/28/12 payment, and Plaintiffs have incurred costs and fees arising from Defendants' failure to accurately administer the Loan.

e. Moral blame attached to Defendants' conduct. Civil Code section 2943 required Defendants to provide accurate reinstatement quotes. In addition, as alleged above, Defendants took advantage of a confidential and fiduciary relationship with Plaintiffs to exploit Plaintiffs.

f.   California public policy favors preventing future harm to Plaintiffs.  Civil Code section 2943 requires Defendants to provide accurate payoff and reinstatement quotes. Imposing a duty of care furthers this policy by making lenders liable when their failure to properly apply Loan payments causes them not to provide accurate payoff and reinstatement quotes.

46.   Defendants' conduct violated a social policy that merits the imposition of tort remedies. Defendants breached their duty of care to the Plaintiffs knowing that their negligence would cause severe, unmitigable harm in the form of Rita Mahoney and Eric Johnson's mental anguish, personal hardship, and substantial consequential damages. Defendants were aware at all times that their negligence in administering the Plaintiffs' loan would cause Plaintiffs to remain in default, would cause the Plaintiffs' arrearages to accrue, and that Plaintiffs would receive further notices of foreclosure of their home and place Rita and Eric in a constant fear of losing their home.

47.   As a proximate result from Defendants' breach of their duty of care Plaintiffs have received notices threatening foreclosure of their home and have suffered severe emotional distress, worry and anxiety. Plaintiffs have suffered and continue to suffer substantial non-economic damages in an amount not less than $500,000.00

48.   As a proximate result from Defendants' breach of their duty of care, Plaintiffs could not pay a reinstatement amount to bring their Loan current and have suffered personal damages: Plaintiffs suffered substantial damages to their credit-worthiness, Plaintiffs have lost more than $21,000 in tax credits which they would not have had to pay if BOA had properly credited the $50,000 12/28/12 payment, and Plaintiffs have incurred costs and fees arising from Defendants' failure to accurately administer the Loan. As a proximate result of the breach of duty by Defendants, and each of them, Plaintiffs have suffered and continue to suffer substantial damages in an amount not less than $500,000.00.

## FOURTH CAUSE OF ACTION

## <u>FOR INJUNCTIVE RELIEF</u>

(Against All Defendants)

49.     Plaintiffs re-allege and incorporate by reference all allegations of the foregoing paragraphs as though fully set forth herein.

50.      Based on the aforementioned acts and omissions of the Defendants, and each of them, Plaintiffs currently face the irreparable injury of losing their property if Defendants proceed to enforce the DOT and if the foreclosure sale threatened by the Defendants proceeds.

51.     Because of the uniqueness of real property, which is the subject of this litigation, Plaintiffs are without adequate legal remedy if Defendants proceed to enforce the DOT and if the foreclosure sale threatened by the Defendants is allowed to proceed.

52.     If a foreclosure sale is allowed to proceed, the burden on Plaintiffs significantly outweighs the benefit to Defendants, and each of them.

53.     By contrast, if the foreclosure sale is enjoined, the burden to any or all Defendants is minimal and not at all outweighed by the benefit to Plaintiffs.

54.     Plaintiffs are informed and believe, and thereon allege, the Notice of Default is defective and void, further Plaintiffs have not been allowed to exercise their rights to reinstate, as set forth above, thereby rendering the entire non-judicial foreclosure improper, void and/or invalid.  Therefore, the Trustee's Sale should be enjoined pending the resolution of this litigation or judgment. Enjoining the foreclosure sale of the Subject Property is fair and equitable because it will enable all pertinent parties to develop a mutually agreeable and beneficial home financing plan.

55.     Accordingly, Plaintiffs are entitled to a temporary restraining order, preliminary injunction, and permanent injunction against all Defendants in this case, prohibiting them from

any further legal or other activity regarding the Property, pending the resolution of this litigation or judgment.

## FIFTH CAUSE OF ACTION

## <u>BREACH OF CONTRACT - SPECIFIC PERFORMANCE</u>

(Against All Defendants)

56.     Plaintiffs re-allege and incorporate by reference all allegations of the foregoing paragraphs as though fully set forth herein.

57.     As set forth above, Plaintiffs entered into a written contract with Defendants comprised of the Note, (Exh. "A"), DOT (Exh. "B") and Servicing Agreement, (Exh.'s "K", "L"). Under the terms of the Note, DOT, and Servicing Agreement on Plaintiffs' property, BOA, and subsequently NATIONSTAR, had the obligation to administer Plaintiffs' Loan properly, specifically to properly apply their Loan payments so that if Plaintiffs asked for reinstatement quotes, Plaintiffs would be provided timely and accurate figures. As described above, Defendants had recorded and served Plaintiffs with a Notice of Default and Election to Sell Under Deed of Trust on June 12, 2012. (NOD Exh. "C".) The NOD provided that Plaintiffs had the right to demand a written and itemized reinstatement quote from Defendants. Under the terms of the contract with Defendants, the Plaintiffs had the right to reinstate and bring their Loan current, and have enforcement of the security instrument discontinued, (see DOT, Exh. "B", par. 19, p. 11), which would terminate all fees and charges arising from their delinquency.

58.     Plaintiffs have offered, and continues to offer, to perform all conditions required by them under the agreement. Plaintiffs were at all times, and still are, ready, willing, and able to perform all conditions required by them on their part to be performed in accordance with the terms and conditions of the contract.

59.     Plaintiffs have demanded that Defendants provide them with an accurate, timely, and consistent reinstatement quote on their Loan, so they could bring their Loan current, and have demanded that Defendants provide an itemized and detailed payment history accounting for their

$50,000.00 payment, with a 1098 tax form reflecting that payment was made in 2012, under the terms of their contract as described above.

60.    Defendants have refused and continue to refuse to provide to Plaintiffs an accurate, timely, and consistent reinstatement quote on the Loan, so Plaintiffs could bring the Loan current, and have refused and continue to refuse to provide an itemized and detailed payment history accounting for their $50,000.00 payment, with a 1098 tax form reflecting that payment was made in 2012, as required by the terms of the contract as described above.

61.    Plaintiffs have no adequate remedy at law to enforce the provisions of the contract described above other than specific enforcement of the agreement.

62.    Plaintiffs are entitled to specific performance of the terms, conditions, and provisions of the contract as described above, by court decree, among other things, ordering Defendants to give Plaintiffs an accurate, timely, and consistent  reinstatement quote on their Loan, so they could bring their Loan current, and ordering Defendants to provide an itemized and detailed payment history accounting for the Plaintiffs' $50,000.00 payment, with a 1098 tax form reflecting that Plaintiffs' payment was made in 2012, which specific performance is required by the terms of the contract as described above.

63.    Plaintiffs are entitled to compensation incidental to a decree of specific performance by virtue of the delay of Defendants in allowing Plaintiffs to exercise their right to reinstate the Loan in that Plaintiffs were deprived of tax credits in 2012, fair rental value of the property during the period of the delay, and suffered other consequential damages in accordance to proof at trial.

64.    Plaintiffs have been required to expend money and to incur obligations for their attorney's fees and have been forced to pursue the instant legal action to exercise their rights under the contract, if Plaintiffs are the prevailing party Plaintiffs are therefore entitled to an awarded of reasonable attorney's fees and costs.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

## DEMAND FOR JURY TRIAL AND PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, having set forth the claims for relief against Defendants, respectfully prays that this Court grant the following relief against the Defendants:

1.     Actual economic and non-economic damages;

2.     For a declaration of the rights and duties of the parties relative to Plaintiff's Property to determine the actual status and validity of the current Title, Loan, DOT, Notice of Default, and other documents pertinent to the Subject Property, and a determination of the respective liabilities of Plaintiffs and Defendants BOA and NATIONSTAR under the terms of the Promissory Note, DOT, and Servicing Agreements;

3.     For statutory damages and relief as provided by all applicable California statutes;

4.     For a restraining order preventing each and all Defendants and its/their agents, employees, officers, attorneys, and representatives from engaging in or performing any of the following acts: (i) offering, or advertising this property for sale and (ii) attempting to transfer title to this property and or (iii) holding any auction therefore;

5.     For an accounting and payment history of the Loan including all fees and charges to the Loan account since the Notice of Default recorded in June 12, 2012;

5.     For an order decreeing that Defendants shall give Plaintiffs an accurate, timely, and consistent  reinstatement quote on the Loan, and provide an itemized and detailed payment history accounting for their $50,000.00 payment, with a 1098 tax form reflecting that payment was made in 2012, in specific performance of Defendants' duties under the contract;

_____
First Amended Complaint                    20.                    Case No. 13-cv-2530-W (JMA)

6.      For an order decreeing that Defendants shall waive or rescind all fees and charges arising from the delinquent balance since Plaintiffs' first request for a reinstatement quote in November 2012;

7.      Costs and reasonable attorney's fees pursuant to all applicable California statutes in such amount as the Court shall determine shall be just and proper; and

For such other and further relief as the Court may deem just and proper.


Dated: February 18, 2014              THORNTON~ KOLLER


                                      /s/ Audrey Powers Thornton
                                      Audrey Powers Thornton
                                      Charles E. Koller
                                      Attorneys for Plaintiffs,
                                      Rita Mahoney and Eric Johnston
                              Email: Audrey@thorntonkoller.com

<u>Mahoney v. Bank of America, et al.</u>
USDC  Southern Dist. Case No. 3:13-cv-02530-W-JMA

## <u>CERTIFICATE OF SERVICE</u>

I declare, that I am, and was at the time of service of the papers herein referred to, over the age of eighteen years, and not a party to the action; and I am employed in the County of San Diego, California, within which county the subject mailing occurred.  My business address is 2100 Palomar Airport Road, Ste. 213, Carlsbad, CA 92011.

On February 18, 2013, I served true copies of the following documents:

**PLAINTIFFS' FIRST AMENDED COMPLAINT AND EXHIBITS**

On the interested parties in this action as follows:

      1.  ROBERT J. GANDY
          Severson & Werson
          The Atrium
          19100 Von Karman Avenue, Ste 700
          Irvine, CA 92612
          RJG@severson.com

      2.  MARK JOSEPH KENNEY
          Severson & Werson
          One Embarcadero Center, Suite 2600
          San Francisco, CA 94111
          MJK@severson.com

x      **BY CM/ECF NOTICE OF ELECTRONIC FILING:**  I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system.  Participants in the case who are registered CM/ECF users will be served by the EM/ECF system. Participants to the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on:   2/18/14

*Audrey Powers Thornton*
Audrey Powers Thornton